**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**STEELE APPAREL COMPANY, Inc., Respondent.**

**No. 20171.**

United States Court of Appeals, Eighth Circuit.

Feb. 4, 1971.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, William F. Wachter, Michael F. Rosenblum, Attys., N.L.R.B., Washington, D. C., for petitioner.

Edward R. Lev, James W. Gladden, Jr., Chicago, Ill., for respondent; May-

er, Brown & Platt, Chicago, Ill., of counsel.

Before VAN OOSTERHOUT and HEANEY, Circuit Judges, and HANSON, District Judge.

VAN OOSTERHOUT, Circuit Judge.

This case is before this court upon the petition of the National Labor Relations Board for enforcement of its original decision and order issued against Steele Apparel Company, Inc., reported at 172 NLRB No. 95, and its supplemental order based upon consideration in light of NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547, issued on October 20, 1969, reported at 179 NLRB No. 40. The facts establishing our jurisdiction under § 10(e) of the National Labor Relations Act as amended (29 U.S.C.A. § 151 et seq.) are undisputed.

The Board found:

(1) The Company violated § 8(a)(1) of the Act by interrogating its employees concerning union [1] activities, by threatening discharge and plant closure, by promising employees benefits as an inducement to abandon the union and by soliciting employees to revoke their authorization cards.

(2) The Company laid off employees Vent and Overturf and discharged employee Hager [2] in violation of § 8(a)(3) and (1) of the Act.

(3) The Company violated § 8(a)(5) and (1) of the Act by refusing to recognize and bargain with the union as the representative of a majority of its employees and that a bargaining order is an appropriate remedy.

With respect to findings (1) and (2), the Company in its brief states:

"The Company considers the holdings of the Board that it violated Sec-

tions 8(a)(1) and (3) of the Act to be in error. However, because of the effect of the substantial evidence rule and the deference given to credibility determinations of the Trial Examiner, the Company does not contest those holdings before this Court."

Accordingly, the Board's findings numbered (1) and (2) above are upheld. The Board is entitled to an enforcement order based upon such findings.

The issues in controversy before us relate to the third finding of the Board to the effect that the Company violated § 8(a)(5) by refusal to recognize and bargain with the union as a representative of the majority of its employees and the further determination that a bargaining order is the appropriate remedy. The Company asserts that there is no substantial evidence in the record considered as a whole under the standard set out in Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, to support the finding of any § 8(a)(5) violation.

The Company is engaged in the manufacture of ladies' garments in Steele, Missouri. The union began a compaign to organize the Company's employees in July of 1966.[3] On August 17, it advised the Company by telegram that it represented a majority of its employees and demand was made for recognition. On August 18, union officers called at the Company's office and renewed their demand for recognition and tendered cards signed by fifty-five employees. The Company officials refused to count the cards, stating that they did not believe the union represented a majority of its employees because of the manner in which the cards were solicited. The Company attorney by letter of August 19 denied the union's majority status and suggested the union ask for an election.[4]

---

1. The union here involved is Southern Missouri-Arkansas District Council Industrial Ladies' Garment Workers' Union, AFL–CIO.

2. Exhibit 45 shows Hager was suspended for thirty days.

3. All dates are in 1966 unless otherwise indicated.

4. The Board in its first order entered prior to Gissel determined that the refusal to recognize the union was not made in good faith. We cannot agree

The union officials tendered cards covering fifty-five employees. The parties agreed that one hundred and two employees were in the appropriate unit. The status of three additional employees, including card signer Dodd was disputed. Dodd's status was not resolved by the Examiner or the Board. The elimination of Dodd reduced card signers to fifty-four. The Board, contrary to the Examiner, invalidated the card of Barbara Rose upon the basis that it was coerced. This reduced card signers to fifty-three. The Board in its brief states, "In other words, even if all of the Company's unit contentions were upheld, the Union would have majority status, holding cards from fifty-three of 104 unit employees." The Board on oral argument conceded that the invalidation of one additional card would destroy the majority status.

Our examination of the lengthy record in the case before us satisfies us that such record, when considered as a whole, does not support the Board's finding that the union is entitled to have the authorization card signed by Thelma Bishop considered in support of its claim for majority status.

The Examiner in his report goes into considerable detail on the Bishop card. Mrs. Bishop signed a union card on August 3 at the solicitation of Mrs. Brooks, Helen Phipps and Dorothy Bolton. On August 12, Mrs. Bishop advised the union by handwritten letter, sent by registered mail on which she paid the charge, as follows: "I don't want to be in the union. Please send me my card back." This letter was received by the union on August 15. There is no substantial evidence that the Company coerced such action. Mrs. Bishop testified that she was troubled by the card signing for religious reasons. On the night of August

17, subsequent to the representation request telegram sent by the union, Phipps and Brooks called on Mrs. Bishop at her home. They were aware from previous conversations of her religious objection to union membership and both of them had statements from preachers to the effect that union membership was not objectionable. Thus it fairly appears that they had knowledge that Mrs. Bishop's repudiation of her card signing was based on religious grounds. There is substantial evidence that Mrs. Bishop had made prior unsuccessful efforts to get her card back from Mrs. Brooks. Included in Mrs. Bishop's testimony is the following:

"Q. You don't remember anything else Mrs. Brooks said? A. I don't know if it was her or Mrs. Phipps said I could vote when it came up for a vote. If I decided I didn't want the union, I would have a chance to vote against it.

"Q. Was this said at the time you signed the card or was it said at the time you were talking about revoking the card? A. I don't remember, but it was said at the time I wanted my card back. They said the card wouldn't be worth anything if I voted against it and that they wanted me to be satisfied with it because if I wasn't that I would vote against it and it wouldn't mean anything."

The cards in the case before us, including the card signed by Mrs. Bishop, after the portion designating the union as the bargaining representative contain the following: "This card conforms to provisions of the Labor Mangement Relations Act, as amended, relating to collective bargaining representation, but it may also be used to show Union interest required for an NLRB election." Many of the cards also contained the words "strictly confidential."

---

with such determination but a detailed discussion of this issue will serve no purpose as the disposition of this issue has

no direct bearing upon the result that we reach.

**936**

Phipps and Brooks do not deny that they talked with Mrs. Bishop and others about being able to vote against the union in an election but contend that they did not represent that the cards were for the sole purpose of an election.

We believe that the election reference on the card and the oral representations made were such as to reasonably lead Mrs. Bishop to believe that the purpose of the card was to authorize an election.

We further are of the view that a fair interpretation of the August 17 interview was that Mrs. Bishop would consider withdrawing her request for the revocation and the return of her card— not that she did in fact withdraw the request for the return of her card. A few days later she again advised the union that she wanted her card back. We hold that no substantial evidentiary support exists for the use by the union of Mrs. Bishop's authorization card to support its claim of majority status at the time it demanded recognition as the representative of the Company's employees. Without Mrs. Bishop's card, the union cannot establish that it represented a majority of the Company's employees. Absent majority representation, the union has not established its right to represent the Company's employees.

We are satisfied that other employees signing the ambiguous cards were misled into believing that the cards were to be used only for the purpose of obtaining an election. Since our holding on the Bishop card is dispositive of the § 8(a) (5) issue, no detailed discussion of the law or the evidence relating to the obtaining of other cards is warranted. Enforcement of the bargaining order based on the claimed § 8(a) (5) violation is denied.

Enforcement of the Board's order is granted as to the § 8(a) (1) and (3) violations and is denied with respect to the claimed § 8(a) (5) violation and the bargaining order.